FILED'10 NOV 9 1448USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ABDUR RASHID AL-WADUD,

        Petitioner,

    v.

OREGON BOARD OF PAROLE AND
POST-PRISON SUPERVISION,

        Respondent.

Civil No. 09-6352-PA

OPINION AND ORDER

    Abdur Rashid Al-Wadud
    SID # 10534564
    Oregon State Correctional Inst.
    3405 Deer Creek Drive SE
    Salem, Oregon 97310

        Attorney for Petitioner

    John R. Kroger
    Attorney General
    Jonathan W. Diehl
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

  1 - OPINION AND ORDER

PANNER, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he challenges the September 6, 2002 decision of the Oregon Board of Parole and Post Prison Supervision ("Board") establishing a Murder Review Date of August 17, 2020. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is denied.

## BACKGROUND

In July of 1995, petitioner killed his ex-wife, and a jury convicted him of Murder in May of 1996. The court's Corrected Judgment imposed the following sentence:

> PURSUANT TO ORS 163.115(a)(b), THE COURT SENTENCES THE DEFENDANT TO IMPRISONMENT FOR LIFE. THE COURT FURTHER ORDERS THAT THE DEFENDANT SHALL BE CONFINED FOR A MINIMUM OF 25 YEARS WITHOUT POSSIBILITY OF PAROLE, RELEASE ON WORK RELEASE OR ANY FORM OF TEMPORARY LEAVE OR EMPLOYMENT AT A FOREST OR WORK CAMP.
>
> THIS IS A DETERMINATE SENTENCE PURSUANT TO BALLOT MEASURE 11 AND SENTENCE IS SUBJECT TO ORS 137.700.
>
> THE PERIOD OF POST-PRISON SUPERVISION IS FOR LIFE.

Respondent's Exhibit 101; Memo in Support (#14), p. 2; State's Reply (#18), p. 4.

On September 6, 2002, the Board established petitioner's "Murder Review Date" as August 17, 2020, the date on which it would evaluate him to determine his likelihood for rehabilitation within a reasonable period of time. Respondent's Exhibit 102, p. 2. Petitioner sought administrative review of this decision, which the

Board ultimately denied on the merits. Respondent's Exhibit 116, pp. 34-35. The Oregon Court of Appeals allowed petitioner's motion to proceed with judicial review, but affirmed the Board's decision without issuing a written opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 127, 128.

Petitioner filed this federal habeas corpus action on December 14, 2009 raising two grounds for relief:

1. The Board's retroactive application of ORS 163.115 (1999) violates the U.S. Constitution's *Ex Post Facto* Clause because: (1) that law was applied retroactively to petitioner; and (2) the new law created a "sufficient risk" of increasing the punishment attached to petitioner's crime; and

2. The Board's actions violate the Equal Protection Clause because the board is treating petitioner differently than other similarly situated individuals, and there is no rational basis for the disparate treatment.

Petitioner has abandoned his equal protection claim on the basis that he lacks sufficient evidence to prove that claim. Memo in Support (#14), p. 7. Respondent asks the court to deny relief on the *ex post facto* claim because the state court decisions denying relief are entitled to deference, and also because the claim lacks merit.

## DISCUSSION

### I.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable

3 - OPINION AND ORDER

application of, clearly established Federal law, as determined by
the Supreme Court of the United States;" or (2) "based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. § 2254(d). A
state court's findings of fact are presumed correct, and petitioner
bears the burden of rebutting the presumption of correctness by
clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly
established precedent if the state court applies a rule that
contradicts the governing law set forth in [the Supreme Court's]
cases" or "if the state court confronts a set of facts that are
materially indistinguishable from a decision of [the Supreme] Court
and nevertheless arrives at a result different from [that]
precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
Under the "unreasonable application" clause, a federal habeas court
may grant relief "if the state court identifies the correct
governing legal principle from [the Supreme Court's] decisions but
unreasonably applies that principle to the facts of the prisoner's
case." *Id* at 413. The "unreasonable application" clause requires
the state court decision to be more than incorrect or erroneous.
*Id* at 410. The state court's application of clearly established
law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but
provides no reasoning to support its conclusion, the federal habeas

4 - OPINION AND ORDER

court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II.  **Analysis**

According to petitioner, the Board violated his right to be free from *ex post facto* punishment when it applied the 1999 version of ORS 163.115 to him, as opposed to the 1995 version of the same law that was in effect at the time petitioner committed his crime.

The *Ex Post Facto* Clause of the U.S. Constitution prohibits states from enacting laws which, by retroactive operation, increase the punishment for a crime after its commission. *Garner v. Jones*, 529 U.S. 244, 250 (2000). A law violates the Ex Post Facto Clause if: (1) it "appl[ies] to events occurring before its enactment," *Weaver v. Graham*, 450 U.S. 24, 29 (1981); and (2) "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Calif. Dep't. of Corr. v. Morales*, 514 U.S. 499, 504 (1995).  There is no *ex post facto* violation if it "creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." *Morales*, 514 U.S. at 513.

Petitioner's *ex post facto* claim is predicated on his interpretation of his sentence as a 25-year determinate sentence, as opposed to a life sentence with a 25-year minimum. An independent review of the record in this case reveals that petitioner was sentenced to "life pursuant to ORS 163.115(a)(b)" and that the sentence was "for a minimum of 25 years without possibility of parole, release, or work release. . . ." Respondent's Exhibit 101.

A life sentence was required pursuant to ORS 163.115(5)(a) (1995) which provided, "A person convicted of murder shall be punished by imprisonment for life." While the Corrected Judgment did make a somewhat confusing reference to the sentence being "a determinate sentence pursuant to Ballot Measure 11," it in no way purported to only impose a 25-year determinate sentence. Measure 11 was Oregon's voter-approved mandatory minimum sentencing scheme which applied to crimes committed on or after April 1, 1995, making petitioner's case one of the earliest Measure 11 cases. As respondent explains, the Corrected Judgment's reference to a determinate Measure 11 sentence constituted the trial court's effort to distinguish petitioner's case from those sentences not imposed under Measure 11. To conclude otherwise simply ignores the vast majority of the Corrected Judgment which is quite clear.

6 - OPINION AND ORDER

Having determined that the trial court sentenced petitioner to an indeterminate life sentence with a 25-year minimum, the court now addresses his *ex post facto* challenge.

At the time of petitioner's crime, Oregon's intentional murder statute provided that a person convicted of murder "shall be punished by imprisonment for life" and that "the defendant shall be confined for a minimum of 25 years without possibility of parole . . ." ORS 163.115(5) (1995). However, because there were no statutory provisions for paroling a person sentenced under this statute, these sentences ended up constituting "true life" sentences. *State v. McLain*, 158 Or. App. 419, 423-425, 974 P.2d 727 (1999). This had the practical effect of allowing certain prisoners convicted of Aggravated Murder and sentenced to "life imprisonment" to have a parole hearing after serving 25 years in custody (with no possibility of release until 30 years), whereas non-aggravated murderers with a life sentence had no opportunity for parole despite committing a lesser crime. The Oregon Court of Appeals ultimately found this result to be unconstitutionally disproportionate, and concluded that the "proper sentence is the 25-year mandatory minimum sentence required by ORS 137.700(a)(A) and ORS 163.115(5)(b), followed by post-prison supervision for life in accordance with OAR 213-005-0004." *Id* at 427.

To resolve the problem involving the Board's inability to parole inmates sentenced pursuant to ORS 163.115(5), the "[Oregon]

Legislative Assembly promptly enacted legislation that grants the Board express authority to parole a person who has been convicted of murder under ORS 163.115, regardless of the date the crime was committed." *State v. Haynes*, 168 Or. App. 565, 567, 7 P.3d 623 (2000) (citing Or. Laws 1999, ch. 782, § 2). Specifically, in 1999 ORS 163.115(5) was amended to provide that a prisoner who served the 25-year minimum sentence could petition the Board for a hearing to allow the Board to determine whether he was "likely to be rehabilitated within a reasonable period of time." ORS 163.115(5)(c) (1999). If the Board made such a finding, it would convert the sentence to "life imprisonment with the possibility of parole, release to post-prison supervision or work release and may set a release date." ORS 163.115(5)(d) (1999).

It is undisputed that the Board retroactively applied the 1999 version of ORS 163.115 and its implementing regulations when it set petitioner's August 17, 2020 review hearing. However, petitioner cannot show that he was adversely affected by the retroactive application because it allows him an avenue to parole where none existed previously. Consequently petitioner's *ex post facto* claim lacks merit, thus he cannot show that the state court decision denying relief on this claim is either contrary to, or an unreasonable application of, clearly established federal law.

///

///

8 - OPINION AND ORDER

## **CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is DENIED.   The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ____ day of November, 2010.

_____
Owen M. Panner
United States District Judge

9 - OPINION AND ORDER